UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| MARGO DANIELL REID, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:15CV41 ACL |
| | ) |
| WAYMON CAMPBELL, et al., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

Plaintiff seeks leave to proceed in forma pauperis in this civil action under a variety of federal statutes. The court has reviewed plaintiff's financial affidavit and will grant plaintiff's motion to proceed in forma pauperis. However, after reviewing plaintiff's complaint, the Court will dismiss this action in accordance with Fed.R.Civ.P.12(h)(3) and 28 U.S.C. § 1915.

## 28 U.S.C. § 1915

Under 28 U.S.C. § 1915(e), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim for relief under § 1983, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct."

## The Complaint

Plaintiff, acting pro se, filed this action pursuant to several separate federal statutes. She alleges that her rights were violated pursuant to Title 18 U.S.C. § 241 and § 242, in addition to, 42 U.S.C. § 1983 and § 1985. She brings this action against defendants: the County of Cape

Girardeau; the Jackson R2 School District; Waymon Campbell (Deputy Juv. Off., Cape Girardeau County); Carrie Lattimer (Cape Girardeau School Registrar); the Cape Girardeau R2 School District; and John and/or Jane Doe.

Plaintiff, mom of a sixteen year-old son, B.R., and a six year-old daughter, A.F., was living in Cape Girardeau County, Missouri, and had her children enrolled in the Jackson R2 School District. According to plaintiff's complaint, in November of 2014, she was having behavioral difficulties with her son, B.R., which she was attributing, in part, to him playing on the Jackson School's football team.

Plaintiff states that she contacted Jackson School's Administration to make a complaint against the football coach. She states in her complaint that she complained that the coach was "coming between [she] and her son." Plaintiff states that after she left the school she was contacted by Child Protective Services who told her that her son was complaining about her and that he did not wish to live with her. Plaintiff informed the CPS worker that she believed the "hotline" call was retaliatory and that her son had to come home and that she was going to move him out of the Jackson School District and into the Cape Girardeau School District because they were going to go and live with plaintiff's grown daughter. Plaintiff states that after speaking with the CPS worker she went back to the school and left a note indicating that her son was no longer allowed to play football. Plaintiff states that the next day she also went to the county court and filed a restraining order against the football coach.

Two days later, plaintiff states that she was visited by the CPS worker in her home, as well as the County Juvenile Officer, defendant Waymon Campbell. Plaintiff stated that she told both men that she distrusted the school district because she was black and the district was predominately white. Plaintiff states that the men explained that her son did not want to return to

2

her home and that her son would soon be 17 years of age and could legally choose where to live. Plaintiff states that she asked the men to leave her home.

Plaintiff states that the following days she met with defendant Carrie Lattimer, the Registrar, to enroll her son in Cape Girardeau R2 School District. She told defendant Lattimer that her family would soon be living with her grown daughter so they would be living within the district. Plaintiff states that her son refused to return her phone calls or meet her grown daughter when she went to pick him up from school in Jackson. He later called her asking where she was when he needed a ride home from school. When she did not immediately go to pick him up, the Jackson school social worker also contacted her to see if she would be coming to give her son a ride home. When the social worker offered to give her son a place to stay for the evening, plaintiff told her no.

The next day, plaintiff was once again contacted by CPS, who told plaintiff she was told her son was at school without a ride home. After interviewing both of plaintiff's children, the CPS caseworker left plaintiff's home. Plaintiff was then contacted by defendant Lattimer who told plaintiff that she would not, at this time, be allowed to enroll B.R. at the Cape Girardeau R2 School District. Plaintiff alleges in her complaint that defendant Lattimer referred her to the CPS caseworkers and defendant Campbell as the reason for the denial. Plaintiff believed that someone at Jackson School had said something negative about plaintiff to cause the registrar to deny her son entrance to the school.

Plaintiff claims that she called defendant Campbell to discuss the issue who told plaintiff that she always had the option to "sign him over." Plaintiff claims "on the advice of Waymon Campbell I agreed to do this." Plaintiff appears to be claiming that she did not understand that when she wrote the statement consenting to the transfer of custody of B.R., this allowed

Waymon Campbell and the attorney for the County Juvenile Office to petition the Juvenile Court for removal of B.R. from plaintiff's home.

Plaintiff claims that she believes defendants acted in a "conspiracy" to violate her civil parental and legal rights. She states that she believes defendant Campbell took advantage of her fragile state of mind, as a parent, and that he knew that she did not understand the legal ramifications of her actions in voluntarily signing over custody of her son. Plaintiff sues defendant Campbell in his official capacity. And plaintiff names the County of Cape Girardeau as his "co-defendant."

Plaintiff states that she is suing the Jackson School District "because of the Administration's knowledge and involvement in the violations of [her] civil, parental and legal rights, with Waymon Campbell and John and/or Jane Doe who work for the school district." Plaintiff believes that John and/or Jane Doe are the persons that must have spoken to Carrie Lattimer to make her deny B.R.'s registration at the Cape Girardeau School District.

Plaintiff claims that she is naming Carrie Lattimer as a defendant, and member of the conspiracy, because she "chose to disregard [her] rights." Plaintiff states that defendant Lattimer's "refusal to name the people at the Jackson School District [or at CPS who she spoke to] is further proof of her involvement." Plaintiff names defendant Lattimer in her official capacity. Plaintiff names the Cape Girardeau School District as Ms. Lattimer's co-defendant.

**Discussion**

Federal district courts are courts of original jurisdiction; they lack subject matter jurisdiction to engage in appellate review of state court decisions. *Postma v. First Fed. Sav. & Loan*, 74 F.3d 160, 162 (8th Cir. 1996). "Review of state court decisions may be had only in the

Supreme Court." *Id*. Thus, to the extent that plaintiff is seeking review of the earlier Juvenile Court decision, this Court lacks jurisdiction to entertain plaintiff's claims.[1]

To the extent that plaintiff is attempting to assert § 1983 claims against the employees of the State and/or county, and any of the other named state-actor defendants, the claims will be dismissed. Plaintiff is suing defendants in their official capacities. *See Egerdahl v. Hibbing Community College*, 72 F.3d 615, 619 (8th Cir. 1995) (where a complaint is silent about defendant's capacity, Court must interpret the complaint as including only official-capacity claims); *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). To state a claim against a municipality or a government official in his or her official capacity, a plaintiff must allege that a policy or custom of the government entity is responsible for the alleged constitutional violation. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978).[2]

---

[1] Liberally construed, plaintiff's claims appear to arise under the 14th Amendment, which protects parents' liberty interests in the "care, custody, and management of their children." *Manzano v. S.D. Dept. of Soc. Servs.,* 60 F.2d 505, 509-10 (8th Cir. 1995). However, to promote comity between state and federal judicial bodies, federal courts have developed a strong policy against exercising jurisdiction over these matters when state proceedings have already commenced. *Aaron v. Target Corp.,* 357 F.3d 768, 774 (8th Cir. 2004). Courts use the doctrine developed in *Younger v. Harris* to carry out this policy. 401 U.S. 37 (1971). Plaintiff complaint indicates that she is, and/or has been, involved in state court proceedings regarding the case, custody and management of her son. Plaintiff has not alleged or demonstrated that these proceedings do not provide her with the opportunity to raise her Fourteenth Amendment claims. As such, the Court will abstain from exercising jurisdiction over plaintiff's claims in this case.

[2] To the extent any of the defendants are employees of the State of Missouri, the claims brought against them in their official capacity are also subject to dismissal. Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official, in this case the State of Missouri. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). "[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983." *Id.*

The instant complaint does not contain any allegations that a policy or custom of a government entity was responsible for the alleged violations of plaintiff's constitutional rights. As a result, the complaint is legally frivolous and fails to state a claim upon which relief can be granted as to the named state-actor defendants.

As additional grounds for dismissing this action, the Court finds that the "domestic relations exception" precludes the exercise of federal jurisdiction. *Cf. Kahn v. Kahn*, 21 F.3d 859 (8th Cir. 1994). Pursuant to this exception, federal courts are divested of jurisdiction over any action in which the subject is divorce, the allowance of alimony, or child custody. *See id*. at 861. In addition, when a cause of action closely relates to, but does not precisely fit into the contours of an action for divorce, alimony, or child custody, federal courts generally will abstain from exercising jurisdiction. *Id.* Although plaintiff's child custody claims are drafted to sound in § 1983, they are either directly related to or are so interwoven with the state child custody proceedings that subject matter jurisdiction does not lie with this Court.

Plaintiff has given no indication that her claims cannot receive a full and fair determination in state court, and it would appear that the state courts, where the custody proceedings allegedly were held, would be better equipped to handle the issues that have arisen relative to plaintiff's custody of her child.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to Fed.R.Civ.P. 12(h)(3) and 28 U.S.C. § 1915(e)(2)(B).

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 13th day of July, 2015.

                                                /s/ John A. Ross
                                             JOHN A. ROSS
                                             UNITED STATES DISTRICT JUDGE